UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES KING,

    Plaintiff,

v.      No. 12 C 5450

ILLINOIS DEPARTMENT OF JUVENILE JUSTICE,      Judge Thomas M. Durkin

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Charles King, who is African-American, alleges that his employer, the Illinois Department of Juvenile Justice (the "IDJJ"), discriminated against him based on his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. R. 1. The IDJJ has moved for summary judgment. R. 33. For the following reasons, the IDJJ's motion is granted.

**Background**

King was employed by the IDJJ in Joliet, Illinois, for eleven years as a Juvenile Justice Specialist. R. 42 ¶ 1; R. 48 ¶ 2. On June 1, 2011, at about 5:00 p.m., King was assigned to monitor juvenile inmates as they left the dining area. R. 42 ¶¶ 8-9. One inmate refused to leave the dining area and spoke disrespectfully to King. *Id.* ¶ 9. The inmate eventually got up from his seat and began to leave the dining area. *Id.* ¶ 13. The inmate, however, continued to speak to King disrespectfully, so

King ordered the inmate to turn around so King could handcuff him. *Id.* ¶¶ 14-15. When King attempted to handcuff the inmate, the inmate knocked King's hands away and spat in King's face. *Id.* ¶ 15. King then tackled the inmate to the ground, *id.* ¶ 16, and another Juvenile Justice Specialist, Alejandro Cervantes, assisted King in placing handcuffs on the inmate. *Id.* ¶ 17. King then helped the inmate to his feet. *Id.* ¶ 18. The inmate suffered scrapes on his head, knees, and elbow from the altercation, *id.* ¶¶ 19-20, but King did not suffer any injuries. *Id.* ¶ 21.

King called his supervisor, John Henley, to inform him about the incident and that King would be taking the inmate to the confinement unit. *Id.* ¶¶ 22, 24. King then took the inmate to the confinement unit, *id.* ¶ 24, while Cervantes went back into the dining area. *Id.* ¶ 23. The IDJJ's statement pursuant to Local Rule 56.1 states that King "did not punch or kick the [inmate] while walking the [inmate] to confinement," and King of course agrees with this statement. *Id.* ¶ 27. The inmate, however, claimed King punched and kicked him, *id.* ¶ 28, and the investigation into King's conduct concluded that he had punched and kicked the inmate, while he was still handcuffed, sometime after they left the dining area and before they reached the confinement unit. *See* R. 35-4 at 9; R. 35-6 at 12.

Another Juvenile Justice Specialist, Charles McKinney, met King at the confinement unit and took custody of the inmate to escort him to the medical unit. *Id.* ¶¶ 26, 29. Supervisor Henley arrived at the confinement unit about two minutes after King got there with the inmate. *Id.* ¶ 30. At about 5:30 p.m., Henley called Superintendent John Rita reporting that King had been assaulted by an inmate and

2

described the incident. *Id.* ¶¶ 31, 33. Henley reported to Rita that the inmate had been taken to the health care unit and returned to the confinement unit because the inmate only had a few minor scratches on his face. *Id.* ¶¶ 33-34. Rita relayed this information to Deputy Director Ron Smith. *Id.* ¶ 35.

At about 7:30 p.m., Supervisor Henley called Superintendent Rita again to inform him that the nurse had placed the inmate on observation status due to a bump on his head. *Id.* ¶ 36. Rita then spoke with Nurse Sherri Hurly and learned that the inmate had been placed under observation for precautionary reasons because the inmate had a few contusions on his head and may have hit his head. *Id.* ¶ 37.

The next day, June 2, Superintendent Rita was told by Chief of Security Luther Byrd that the inmate appeared to have sustained serious injuries, which Rita confirmed by visiting the inmate with Byrd. *Id.* ¶ 38. Rita informed Deputy Director Smith of the update regarding the inmate's injuries, and Smith instructed Rita to request an external investigation of the incident. *Id.* ¶ 40.

Investigator A.C. Kinard, an investigator with the Illinois Department of Corrections, was assigned to investigate charges against King of official misconduct, battery of a youth, conduct of an individual, and use of excessive force on a youth. *Id.* ¶ 41. Kinard interviewed King, the inmate, and other witnesses. *Id.* ¶¶ 44, 46. Kinard's investigation substantiated the charges against King, *id.* ¶ 47, and concluded that King has assaulted the inmate, while the inmate was still handcuffed, in between the time they left the dining area and arrived at the

confinement unit. *See* R. 35-4 at 9; R. 35-6 at 12. The investigation also substantiated charges against Supervisor Henley and Juvenile Justice Specialist Cervantes for "provid[ing] false and misleading" information during the investigation. R. 35-4 at 9-10. Based on Kinard's investigation and conclusion, Chief Byrd recommended, and Superintendent Rita determined, that King should be referred to the Employee Review Board for disciplinary action. *Id.* ¶¶ 48-49.

King's Employee Review Hearing took place on August 15, 2011. *Id.* ¶ 50. Cervantes, the Juvenile Justice Specialist who helped King handcuff the inmate, testified at the hearing. *Id.* ¶ 52. According to King, Cervantes testified at the hearing that the inmate was handcuffed without incident, whereas Cervantes had previously stated that an "incident" had occurred when King and Cervantes tried to handcuff the inmate. *Id.*; R. 35-2 at 72. The hearing officer recommended to Deputy Director Smith that King be discharged. R. 42 ¶ 54.

Based on a review of the hearing officer's findings, Investigator Kinard's findings, and a report from Chief Byrd, Deputy Director Smith agreed to discharge King. *Id.* ¶ 55. Director Author Bishop approved King's discharge. *Id.* ¶ 56. King was terminated on October 1, 2011. *Id.* ¶ 58.

King cites one other non-African-American IDJJ employee, Juvenile Justice Specialist, Marcus Vasquez, who he alleges committed similar violations but who he alleges was disciplined more leniently. Vasquez is a Latino-American. Vasquez was assaulted by an inmate. R. 42 ¶ 60. King testified that other IDJJ employees told him that in defending himself, Vasquez punched the inmate many times and broke

4

his hand doing so. *Id.* ¶¶ 61-62. King testified that he saw the inmate after the incident, and the inmate was seriously injured. R. 48 ¶ 7. King, however, did not witness the incident, review documents regarding the incident, or speak with Vasquez about the incident. R. 42 ¶¶ 63-64. Chief Byrd investigated Vasquez's case and determined that Vasquez's conduct did not merit discipline. *Id.* ¶ 68; R. 48 ¶ 9. There is no other evidence or testimony in the record about Vasquez's case.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

Title VII of the 1964 Civil Rights Act makes it unlawful for an employer to discriminate against an employee on account of his "race, color, religion, sex, or

5

national origin." 42 U.S.C. § 2000e-2(a)(1). The "central question at issue is whether the employer acted [adversely against the plaintiff] on account of the plaintiff's race." *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013). A plaintiff can answer this question according to either of two "methods" of proof. The "direct method" is nothing more than relying on any evidence—whether direct or circumstantial—that "link[s] an adverse employment action to an employer's discriminatory animus." *Id.* at 995. The indirect method is "a particular way of using circumstantial evidence at the summary judgment stage," *id.* at 996, that requires the plaintiff to establish a *prima facie* case of discrimination—meaning that the defendant afforded more favorable treatment to similarly situated employees of a different race—and then show that any non-discriminatory reasons for the adverse employment action "were dishonest or phony," or pretextual. *See Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 662-63 (7th Cir. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). Whether evaluated according to the direct or indirect method, circumstantial evidence that requires "guesswork and speculation [is] not enough to avoid summary judgment." *Good v. Univ. of Chi. Med. Center*, 673 F.3d 670, 675 (7th Cir. 2012).

King concedes that he has no direct evidence that the IDJJ discriminated against him. R. 40 at 3. Instead, King argues that both he and Vasquez were accused of using excessive force in defending themselves from inmate attacks, but he was fired and Vasquez was not disciplined; King contends that this is indirect evidence that the IDJJ discriminated against him. R. 40 at 4. There is no admissible

6

evidence in the record, however, showing that Vasquez's case is analogous to King's case. King's testimony about what other IDJJ employees told him regarding the Vasquez incident is hearsay that cannot serve to create a genuine question of fact on summary judgment. *See Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011) (the plaintiff's lack of personal knowledge about a certain fact meant the plaintiff's testimony was inadmissible and could not create a genuine issue of material fact on summary judgment). Furthermore, the IDJJ determined that King had assaulted the inmate while the inmate was handcuffed, and King does not allege that the Vasquez incident involved similar circumstances. Rather, the record in this case includes evidence that an investigation into Vasquez's conduct determined that he acted appropriately in the circumstances, whereas an investigation into King's conduct found the opposite. Although King testified that the inmate involved in the incident with Vasquez was seriously injured, King has presented no evidence that Vasquez caused those injuries, or if Vasquez did cause those injuries, that his conduct warranted discipline. Additionally, King has not presented evidence of the precise charges against Vasquez, or alleged that the charges Vasquez faced were the same as King's. Without admissible evidence that King's conduct was analogous to Vasquez's, Vasquez is not an adequate comparator for King's case, and Vasquez's case cannot serve as evidence that the IDJJ discriminated against King.

Even if King could establish a *prima facie* case of discrimination, no genuine question of material fact exists regarding the motivation for King's termination. The

IDJJ, of course, contends that King was fired because he used excessive force against the inmate. R. 34 at 10. King argues that this reason is "insufficient to motivate the termination," R. 40 at 6, but he does not support this argument. Instead, King alleges that the IDJJ coerced Cervantes into changing his testimony at King's hearing. R. 40 at 6. The IDJJ admits that Cervantes changed his testimony in some fashion, R. 42 ¶ 52, but there is no evidence in the record to support King's allegation that Cervantes was coerced. Absent evidence that the investigation and hearing regarding King's conduct was somehow rigged, the Court cannot act as a "superpersonnel department" and reconsider "the merits of an employer's decision . . . to determine best business practices." *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (internal quotation marks omitted).

## Conclusion

For the foregoing reasons, the IDJJ's motion for summary judgment, R. 33, is granted, and King's claim is dismissed.

ENTERED:

_____
Thomas M. Durkin
United States District Judge

Dated: April 17, 2014

8